Robert DICKERSON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2008–SC–000074–MR.

Supreme Court of Kentucky.

Feb. 19, 2009.

V. Gene Lewter, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky James Hays Lawson, Assistant Attorney General, Criminal Appellate Division Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

## I. INTRODUCTION.

Robert Dickerson was indicted on new charges after we vacated his original convictions. We reject Dickerson's claim that these new charges were a result of prosecutorial vindictiveness. We also reject Dickerson's claim that his right to a speedy trial was violated.

## II. FACTUAL AND PROCEDURAL HISTORY.

Dickerson was convicted of one count of first-degree sodomy, one count of possession of a handgun by a convicted felon, one count of violating the Sex Offender Registration Act, and of being a second-degree persistent felony offender (PFO II). It is not necessary to recount the lengthy and disturbing facts that led to those convictions. Rather, for purposes of this opinion, we merely state that we reversed Dickerson's convictions in October 2005 because of numerous errors.[1]

After several continuances on remand, Dickerson eventually pleaded guilty to one count of criminal abuse in the first degree, one count of possession of a handgun by a convicted felon, and one count of possession of a "[long gun]" by a convicted felon.[2] Dickerson was sentenced to ten years' imprisonment on the criminal abuse charge and a total of fifteen years' imprisonment on the firearms charges. The sentences were ordered to run consecutively for a total imprisonment term of twenty-five years. Dickerson then filed this appeal as a matter of right.[3] We affirm.

## III. ANALYSIS.

Dickerson raises two arguments in this appeal. First, he claims his right to a speedy trial was violated on remand. Second, he contends the Commonwealth engaged in prosecutorial vindictiveness when it obtained a new indictment containing new charges after the issuance of our 2005 opinion reversed the original convictions.

---

1. *Dickerson v. Commonwealth*, 174 S.W.3d 451 (Ky.2005).

2. Kentucky Revised Statutes (KRS) 527.040, which governs possession of a firearm by a convicted felon, does not specifically refer to a "[long gun]." Rather, that statute only refers to, and differentiates between, firearms and handguns. No argument has been raised that the "[long gun]" referred to in the final judgment of conviction is not, for purposes of KRS 527.040, a firearm.

3. Ky. Const. § 110(2)(b).

We disagree with both of Dickerson's arguments.

## A. *Issues Were Minimally Preserved for Appellate Review.*

Before we address the merits of Dickerson's arguments, we must first address the Commonwealth's contention that Dickerson's issues in this appeal are not properly before us because Dickerson did not adequately preserve his appellate rights when he entered his guilty plea. Although the record of the procedures below is not completely clear, we ultimately conclude that Dickerson has preserved his right to bring this appeal.

 We agree with the Commonwealth's contention that a valid, unconditional guilty plea may constitute a waiver of many of a defendant's appellate rights.[4] And nothing in the final judgments of conviction in question actually reflects that Dickerson's guilty plea was conditional. But the motion to enter guilty plea form contains the handwritten notation "Conditional" at the top.[5] Similar handwritten notations appear on the Commonwealth's offer on a plea of guilty and the arraignment order after Dickerson's guilty plea. In fact, at the hearing at which the trial court accepted Dickerson's plea of guilty, there were scant references to the fact that the plea was to be conditional. And Dickerson's counsel only vaguely remarked that the plea was conditional because Dickerson "may, or may not, file an appeal of both of the indictments. He just wants to have something general for later on, and we have agreed to that[,]" to which the trial court simply responded, "OK, sure. OK, well you can appeal the proceeding, and I don't have any problem with that."

The Commonwealth's preservation argument runs contrary to our precedent. In *Gabbard v. Commonwealth*, a defendant's motion to enter a guilty plea was captioned "Conditional Plea of Guilty but Mentally Ill."[6] At sentencing, defense counsel merely stated that he "would simply raise the same objections that I raised prior to the entry of the plea and incorporate all those objections raised by motion and preserved in the conditional plea by reference."[7] When the prosecutor indicated he was unclear about which motions defense counsel was referring to, defense counsel stated, "the motions I am referring to are those motions regarding the defendant's competency that were preserved for appellate review; I think there were three of them, preserved for appellate review, in those proceedings."[8] When the Commonwealth contended that the issues raised in the appeal were not properly before us because they were inadequately set forth during the trial court proceedings, we held that the issues were sufficiently preserved

---

4. *See, e.g., Hughes v. Commonwealth*, 875 S.W.2d 99, 100 (Ky.1994) ("The record is undisputed that Appellant unconditionally pled guilty. The general rule is that pleading guilty unconditionally waives all defenses except that the indictment did not charge an offense, [*Bush v. Commonwealth*, 702 S.W.2d 46, 48 (Ky.1986)]."); *Hendrickson v. Commonwealth*, 450 S.W.2d 234, 235 (Ky.1970) ("The effect of a plea of guilty is to waive all defenses except that the indictment charged no offense and to authorize the imposition of the penalty prescribed by law.").

5. *See* Kentucky Rules of Criminal Procedure (RCr) 8.09 ("With the approval of the court a defendant may enter a conditional plea of guilty, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified trial or pretrial motion. A defendant shall be allowed to withdraw such plea upon prevailing on appeal.").

6. 887 S.W.2d 547, 550 (Ky.1994).

7. *Id.*

8. *Id.*

for our review, although these issues were "inartfully done," because "the Commonwealth and the trial court were aware of the objections raised prior to the entry of the conditional plea."[9] By contrast, we have refused to consider a claim presented in an appeal from a conditional guilty plea if that issue had not been brought to the trial court's attention and was not mentioned in the conditional guilty plea.[10]

Synthesizing our precedent in this area leads to the conclusion that we will consider issues on appeal from a conditional guilty plea only if those issues: (1) involve a claim that the indictment did not charge an offense or the sentence imposed by the trial court was manifestly infirm, or (2) the issues upon which appellate review are sought were expressly set forth in the conditional plea documents or in a colloquy with the trial court, or (3) if the issues upon which appellate review is sought were brought to the trial court's attention before the entry of the conditional guilty plea even if the issues are not specifically reiterated in the guilty plea documents or plea colloquy.

In the case at hand, before the day he entered his conditional guilty plea, Dickerson had submitted a motion to dismiss the indictments with prejudice because of alleged prosecutorial vindictiveness and a separate motion for a speedy trial. And the trial court was aware, or should have been aware, of the issues raised in this appeal at the time it accepted Dickerson's conditional plea. So we hold that Dickerson has sufficiently preserved for our review the issues in this appeal. It would have been far better practice, of course, if the issues upon which Dickerson's guilty plea were conditioned had been identified in the record, instead of Dickerson's counsel's vague statement that Dickerson's plea was conditional merely because Dickerson wanted to have "something general" upon which to base an appeal. Had the issues raised in Dickerson's appeal not been expressly raised in the circuit court, we would not have considered them on appeal. To avoid these types of situations in the future, we urge the bench and bar of this Commonwealth to specify in the record in conditional guilty pleas the precise issues being reserved for appellate purposes. Such careful preservation should eliminate uncertainty, which would inure to the benefit of everyone involved.

### B. *Dickerson's Right to a Speedy Trial Was Not Violated.*

As stated before, we reversed Dickerson's original convictions in October 2005. Dickerson entered his guilty plea in September 2007, a period of almost two years. Dickerson contends that the delay violated his right to a speedy trial. We disagree.

We consider four factors when determining whether a defendant's right to a speedy trial has been violated: (1) length of delay, (2) reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant.[11] And the Commonwealth concedes that Dickerson timely and adequately asserted his right to a speedy trial. So our analysis will focus on the remaining three factors.

9. *Id.*

10. *Lovett v. Commonwealth*, 103 S.W.3d 72, 84 (Ky.2003) ("Appellant did not raise this issue before the trial court and did not reserve it for appeal at the time he entered his conditional plea.").

11. *See, e.g., Parker v. Commonwealth*, 241 S.W.3d 805, 811 (Ky.2007), *citing Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

### 1. *Length of Delay.*

■ Our opinion reversing the initial convictions was issued in October 2005. So the speedy trial clock did not begin to tick until that date.[12] Dickerson pleaded guilty in September 2007. Thus, the total length at issue is approximately twenty-three months.

Although there is no bright line rule for how long a delay must be in order to be presumptively prejudicial, we note that we have found presumptively prejudicial delays shorter than the twenty-three month delay in this case.[13] Although our speedy trial analysis does not end here, we find that the delay in this case is presumptively prejudicial.[14]

### 2. *Reason for the Delay.*

In order to ascertain the reasons for the numerous delays in this case, we must set forth the facts underlying the delays that are ascertainable from the record. In December 2005, shortly after our order reversing Dickerson's convictions, the charges contained in at least one of Dickerson's previous indictments, 01–CR–00015, was set for trial in May 2006. In April 2006, Dickerson's counsel filed a motion for a continuance. That motion stated that a continuance was appropriate because Dickerson's counsel needed to re-

view "volumes of documents" and "all physical evidence pertaining to this case[,]" and because "[c]ounsel does not have the discovery provided to prior defense counsels...." In response, the trial court postponed the trial to August 2006.

In a July 2006 hearing, defense counsel stated that he was not ready for trial because he had not received the grand jury tapes he had requested. The Commonwealth responded that there had been a flood that had damaged the tapes but that his office was trying to get the tapes to defense counsel. In response, the trial court again postponed the trial to November 2006.[15]

After that new trial date was set, defense counsel requested a hearing on a discovery matter. Meanwhile, despite the fact that he was represented by counsel, Dickerson filed several lengthy motions on his own, including a motion to dismiss the charges and a motion for a continuance, which appeared to be premised on alleged exculpatory evidence possessed by the Commonwealth but not provided to Dickerson or his counsel. The trial court, by then assigned to a special judge, set a new trial date for February 2007.

A new special judge subsequently appointed ordered the February 2007 trial to

---

12. *See, e.g., United States v. Bizzard,* 674 F.2d 1382, 1386 (11th Cir.1982) ("The time between a conviction and a reversal which requires retrial is clearly not counted for speedy trial purposes.").

13. *See, e.g., Dunaway v. Commonwealth,* 60 S.W.3d 563, 569 (Ky.2001) (thirteen and one-half month delay found to be presumptively prejudicial); *Bratcher v. Commonwealth,* 151 S.W.3d 332, 344 (Ky.2004) (eighteen month delay presumptively prejudicial).

14. The Commonwealth argues that we should not find the delay to be presumptively prejudicial because, in its view, the delay was attrib-

utable to Dickerson's continuance requests and changes in the officeholders of the Fulton Circuit Court judge and Fulton Commonwealth's attorney. But those reasons for the delay should be considered under the reason-for-the-delay prong, not the length-of-delay prong.

15. This recitation of the events occurring at the July 2006 hearing is based upon the Commonwealth's brief because most of the videotapes in the record are not labeled to enable us readily to determine their contents. Importantly, Dickerson does not dispute the Commonwealth's recitation of the July 2006 events in his reply brief.

be cancelled. In February 2007, the trial court set another pretrial conference for March 2007. In April 2007, Dickerson was indicted on two counts of possession of a firearm by a convicted felon; and trial was set for September 2007. But instead of a jury trial, Dickerson entered his conditional guilty plea in September 2007.

It is apparent that most, if not all of the continuances were granted in response to motions by Dickerson or his counsel. However, at least some of the motions for continuance filed by Dickerson were due to the Commonwealth's alleged failure to provide discovery. And the Commonwealth admits that one employee of the Commonwealth Attorney's office was terminated because she refused to find and copy a grand jury tape for Dickerson. So because defense counsel should not be punished for properly seeking to obtain from the Commonwealth all pertinent discovery before trial, it appears that some of the delay must be attributed to the Commonwealth's failure timely and fully to comply with its discovery obligations.

 Although we certainly understand that a flood and a change in the Commonwealth's attorney and circuit judge officeholders necessarily engendered some delay, those factors should not have necessitated a delay of nearly two years. After all, ultimately, it is the Commonwealth's responsibility to ensure that cases are timely resolved.[16]

On balance, therefore, we find that the reasons for the delay weigh slightly in Dickerson's favor.

### 3. *Prejudice.*

Turning to the heart of our speedy trial inquiry, we analyze whether the delay caused Dickerson to suffer actual prejudice. Notwithstanding Dickerson's assertions to the contrary, we find that he did not suffer actual prejudice stemming from the delay.

To bolster his claim that the delay caused him to suffer prejudice, Dickerson points to the general fact that he remained incarcerated from the time we reversed his convictions until he entered his guilty plea. And the United States Supreme Court has identified the prevention of "oppressive pretrial incarceration" as an interest of a defendant that the right to a speedy trial was designed to prevent.[17] But the record reflects that the trial court did reduce Dickerson's bond, although Dickerson was unable to post the lowered bond. We have forcefully rejected similar generalized claims regarding allegedly oppressive pretrial incarceration.[18]

Dickerson also makes a general claim that the passage of time could have caused him to suffer prejudice. More precisely, Dickerson argues that it is "not unforeseeable that memories fade and witnesses can no longer remember what happened with accuracy. The prosecution's evidence might have been faulty. . . . His [Dickerson's] cross-examination could have been less effective. And his own witnesses likely would have had less of an ability to recall important details." Noticeably lack-

---

16. *Dunaway*, 60 S.W.3d at 570. Indeed, the United States Supreme Court held that "[a] more neutral reason [for a delay] such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531, 92 S.Ct. 2182.

17. *Barker*, 407 U.S. at 532, 92 S.Ct. 2182.

18. *Bratcher*, 151 S.W.3d at 345 ("Conclusory claims about the trauma of incarceration, without proof of such trauma, and the *possibility* of an impaired defense are not sufficient to show prejudice.").

ing from Dickerson's brief is any concrete allegation of prejudice. Our precedent clearly holds that speculative and generic claims are insufficient to support a claim of prejudice.[19]

### 4. Conclusion.

■ Although the delay in this case gives rise to presumptive prejudice, Dickerson has failed to show the delay caused actual prejudice. So even though at least some of the delay is attributable to the Commonwealth's failure fully and timely to comply with its discovery obligations, we hold that Dickerson is not entitled to have the charges against him dismissed.

### C. There Was No Vindictive Prosecution.

■ Dickerson contends that the Commonwealth engaged in vindictive prosecution when it obtained a new indictment against him sometime after we vacated his prior convictions. We disagree.

■ Prosecutorial vindictiveness can manifest itself in two ways: actual vindictiveness and presumed vindictiveness

based upon the facts and circumstances of the case.[20] Dickerson has not argued actual vindictiveness. So we must focus on the presumption of vindictiveness method.

As stated previously, the record reflects that the Commonwealth obtained a new indictment against Dickerson in April 2007. That indictment charged Dickerson with two counts of being a felon in possession of a firearm. Originally, Dickerson was charged with, and found guilty of, one count of being a felon in possession of a handgun, although three firearms were found in his residence at the time of his arrest. Our original opinion mentioned that the trial court had admonished the jury to disregard evidence of two other firearms; but we ultimately concluded that since so much other unfairly prejudicial evidence had been admitted, "the trial court's admonition to disregard all evidence about the .45 pistol and the shotgun did not unring the bell."[21] So, on remand, Dickerson moved in limine to exclude evidence of the shotgun and pistol. About two months later, the Commonwealth obtained the indictment charging Dickerson

19. *Id.* ("Conclusory claims about the trauma of incarceration, without proof of such trauma, and the *possibility* of an impaired defense are not sufficient to show prejudice. As we noted above, a long delay, while creating 'presumptive prejudice' sufficient to continue the *Barker* analysis, does not necessarily create real prejudice to a defendant."). *See also Preston v. Commonwealth,* 898 S.W.2d 504, 507 (Ky.App.1995) ("The possibility of prejudice alone is not sufficient to support the position that speedy trial rights have been violated. It is the burden of the defendant to establish actual prejudice."); *United States v. Loud Hawk,* 474 U.S. 302, 315, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (holding that the "possibility of prejudice is not sufficient to support respondents' position that their speedy trial rights were violated. In this case, moreover, delay is a two-edged sword. It is the Government that bears the burden of proving its case beyond a reasonable doubt. The passage of

time may make it difficult or impossible for the Government to carry this burden.").

20. *United States v. Poole,* 407 F.3d 767, 774 (6th Cir.2005) ("There are two approaches to showing prosecutorial vindictiveness: A defendant can show actual vindictiveness, by producing objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights, or the Court can find a presumption of vindictiveness by applying the realistic likelihood of vindictiveness, standard which focuses on the prosecutor's stake in deterring the exercise of a protected right and the unreasonableness of his actions.") (quotation marks omitted).

21. *Dickerson,* 174 S.W.3d at 466 (quotation marks omitted). We also held that the fact that Dickerson possessed the shotgun was "irrelevant to prove the handgun charge." *Id.* at 464.

with two more counts of being a felon in possession of a firearm.

Given the peculiar facts of this case, it appears to us that the Commonwealth sought the new indictment to resolve an evidentiary problem that we had identified in our opinion reversing. So even assuming solely for the purposes of argument that Dickerson has made a prima facie showing of prosecutorial vindictiveness, the Commonwealth has successfully rebutted that presumption that the new charges against Dickerson were a result of prosecutorial vindictiveness by showing that "there exists objective information in the record to justify the ... additional charges."[22] Indeed, our original opinion highlighted the problem inherent to the lack of charges pertaining to the two additional firearms, a problem that the new indictment solved. We, therefore, reject Dickerson's vindictive prosecution claim.

### III. CONCLUSION.

For the foregoing reasons, the judgment of the trial court is affirmed.

All sitting. All concur.

---

22. *Poole,* 407 F.3d at 776. *See also id.* at 777 ("[I]t is clear that the government has adequately rebutted any presumption of vindictiveness by showing that its decision to reindict was not motivated by a vindictive desire to punish the defendant for exercising his right to trial, but rather a re-evaluation of the case, in light of all the evidence elicited during trial, subsequent jury discussions, and evidentiary rules affecting the admissibility of relevant evidence.").