**COMMONWEALTH of Kentucky,**
**Appellant**

v.

**Bobby PERRY, Appellee**

**NO. 2014-CA-001282-MR, NO.**
**2014-CA-001283-MR**

Court of Appeals of Kentucky.

JULY 15, 2016; 10:00 A.M.

Discretionary Review Denied by Supreme Court February 9, 2017.

BRIEF FOR APPELLANT: Jack Conway, Attorney General

Lawrence Darnell Hilton, Special Assistant Attorney General, Covington, Kentucky

BRIEF FOR APPELLEE: Linda Roberts Horsman, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Kentucky

BEFORE: CLAYTON, NICKELL AND THOMPSON, JUDGES.

## OPINION

THOMPSON, JUDGE:

The Commonwealth of Kentucky appeals from two orders of the Kenton Circuit Court, one dismissing two counts of indictment 09-CR-00678 and the other dismissing indictment 13-CR-00978 on the basis of prosecutorial vindictiveness. The issue presented is whether the doctrine of prosecutorial vindictiveness precludes the Commonwealth from pursuing additional charges against Bobby Perry after he successfully appealed his conviction. We conclude the doctrine is inapplicable to Perry's case and reverse.

Perry was indicted in October 2009 on two counts of first-degree sodomy and one count of first-degree sexual abuse in 09-CR-00678 for alleged acts committed against C.P. Perry was tried on two counts of first-degree sodomy and convicted on one count for acts committed in 2005. The trial court sentenced Perry in accordance with the jury's recommended sentence of forty-five years.

Perry appealed his conviction and sentence to the Kentucky Supreme Court. In October 2012, the Court reversed. In reviewing the matter, the Court noted that the "path that led to [the Supreme Court was] complicated," and the timing of events was "difficult to discern from the record." *Perry v. Commonwealth*, 390 S.W.3d 122, 124 (Ky.2012). The Court also emphasized that the Commonwealth's evidence was not conclusive. It summarized the various allegations of sexual abuse made by C.P. over the course of several years:

> In few cases are there so many allegations of abuse against so many people. C.P. alleges that he was sodomized by his adoptive father up to four times between the ages of ten and possibly up to around age 13, which are the acts that form the basis for this case. He also alleges that he was sexually abused by "a man on the railroad tracks," by a "homeless man in a dumpster," by a man named "Lance," by his two brothers, by his birth mother, by a young man named "Cody" who was in placement with him, by a stranger who let him use the phone when he ran away from another placement, by a girl named "Charmaine," and by his adoptive mother. He claims he attempted to rape two girls named "Molly" and "Diane." He made all these allegations around the same time he accused the Appellant, who is his uncle and adoptive father.
>
> There is no physical evidence of any of the claims, and there are no witnesses.

*Id.* The Court then detailed the facts, including C.P.'s psychiatric treatment, which included a powerful psychotropic drug. As the Court stated:

> By the time he gave his second interview after claiming Appellant had sodomized him, he had been in several treatment settings, was accused of a sexual encounter with "Cody" during treatment, had attempted suicide, and had been given Seroquel, a powerful psychotropic drug. In late 2008, he expressed to one therapist, according to Appellant's motion for evaluation, that "he was

not sure if what he was thinking was reality."

*Id.* at 126–27. Ultimately, the Court held the trial court should have allowed an independent competency evaluation to determine C.P.'s competency to testify. *Id.* at 128. It also concluded the trial court erred when it precluded the introduction of C.P.'s prior allegations of sexual abuse without conducting a proper hearing pursuant to *Dennis v. Commonwealth,* 306 S.W.3d 466 (Ky.2010). *Perry,* 390 S.W.3d at 134.

On December 5, 2013, the Commonwealth obtained an indictment against Perry charging him with two additional counts (counts four and five) of criminal abuse in the first degree, victim under 12 years of age, for alleged acts committed against C.P. during the time period of January 1, 2006 and December 31, 2007. On the same date, the Commonwealth sought and obtained indictment 13-CR-00978 charging Perry with criminal abuse in the first degree against S.P., C.P.'s brother. The alleged abuse against S.P. also occurred during the January 1, 2006 and December 31, 2007 time period. The allegations of physical abuse were that Perry and his wife, Ernestine, put C.P. and S.P into trash bags and beat them. Additionally, the Commonwealth alleged Perry attempted to break or re-break C.P.'s wrist.

Perry filed a motion to dismiss counts four and five in 09-CR-00678 or sever those counts and later filed a motion to dismiss 13-CR-00978 in its entirety. Both motions were based on the argument that the Commonwealth violated the Due Process Clause of the United States Constitution by exercising prosecutorial vindictiveness in bringing new criminal abuse charges following Perry's successful appeal of his 2010 conviction. In his motions, Perry acknowledged that the allegations of physical abuse were independent of the crimes against C.P. alleged in the original indictment. However, Perry argued that in 2008 and 2009, the Commonwealth was aware of the allegations of physical abuse made by C.P. and S.P. He further alleged that there was evidence of actual prosecutorial vindictiveness because there was evidence that his wife also participated in the physical abuse alleged against C.P. and S.P. but was not charged.

In regard to 09-CR-00678, the trial court found as follows:

> From a review of the record in this case, this Court is of the opinion and finds that there is a reasonable likelihood of a vindictive motive on the part of the Commonwealth in charging the Defendant with Counts IV and V of the indictment. The Commonwealth's rationale that the new indictments were based on new evidence is not supported by the evidence. This Court finds that there was evidence available to the Commonwealth of criminal abuse of the child by the Defendant before he was indicted and tried on the sexual abuse and sodomy charges. Records of the Cabinet for Health and Family Services show that the two alleged child victims had reported physical mistreatment and abuse prior to 2009. The Commonwealth has offered no evidence of any significantly different evidence of physical abuse since the remand of this case in 2012.

The trial court further found that the Commonwealth failed to rebut the presumption of vindictiveness. 13-CR-00978 was dismissed on the same basis after the trial court found the Commonwealth was aware of S.P.'s allegations of physical abuse by Perry when Perry was indicted and tried on the sexual abuse and sodomy charges involving C.P. The Commonwealth appealed both orders.

 The prosecution of crime is the duty of the prosecutor and, as a general

rule, that duty is exercised within the prosecutor's discretion. *See Jones v. Commonwealth*, 413 S.W.3d 306, 311 (Ky.App.2012). However, "broad though that discretion may be, there are undoubtedly constitutional limits upon its exercise." *Bordenkircher v. Hayes*, 434 U.S. 357, 365, 98 S.Ct. 663, 669, 54 L.Ed.2d 604 (1978). One such limitation, is the principle of prosecutorial vindictiveness.

■■■ Prosecutorial vindictiveness is a constitutional doctrine based on the premise that a person "may not be punished for exercising a protected statutory or constitutional right." *United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982). "Prosecutorial vindictiveness can manifest itself in two ways: actual vindictiveness and presumed vindictiveness based upon the facts and circumstances of the case." *Dickerson v. Commonwealth*, 278 S.W.3d 145, 152 (Ky.2009).

> A defendant can show actual vindictiveness, by producing objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights, or the Court can find a presumption of vindictiveness by applying the realistic likelihood of vindictiveness, standard which focuses on the prosecutor's stake in deterring the exercise of a protected right and the unreasonableness of his actions.

*United States v. Poole*, 407 F.3d 767, 774 (6th Cir.2005) (quoting *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir.2003)).

■■■ However, merely seeking to punish a defendant for his criminal conduct is not indicative of vindictiveness. As the United States Supreme Court pointed out in *Goodwin*, 457 U.S. at 372, 102 S.Ct. at 2488, "[t]he imposition of punishment is the very purpose of virtually all criminal proceedings." Because "a certain amount of punitive intent ... is inherent in any prosecution," a claim of vindictive prosecution presents "the delicate task of distinguishing between the acceptable 'vindictive' desire to punish [a defendant] for any criminal acts, and 'vindictiveness' which violates due process." *United States v. Doran*, 882 F.2d 1511, 1518 (10th Cir.1989).

Only rarely will a defendant be able to establish actual vindictiveness. "Motives are complex and difficult to prove." *Goodwin*, 457 U.S. at 373, 102 S.Ct. at 2488. Consequently, the majority of cases where prosecutorial vindictiveness has been found have been based on presumed prosecutorial vindictiveness.

The presumption of prosecutorial vindictiveness has its roots in the United States Supreme Court decision in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), (overruled in part by *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)). In *Pearce*, the Court held that when a judge imposes an increased sentence following a retrial after a successful appeal, there is a presumption of vindictiveness requiring that the judge set forth in the record affirmative reasons "based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Pearce*, 395 U.S. at 726, 89 S.Ct. at 2081.

The reasoning in *Pearce* was extended to prosecutorial actions in *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). In that case, the defendant successfully appealed his conviction of a misdemeanor assault charge. Based on the same alleged conduct, the prosecutor then obtained a new indictment charging the defendant with felony assault. Addressing the argument of prosecutorial vindictiveness, the Court held that "the Due Process Clause is not offended by all possibilities of increased punishment upon

retrial after appeal, but only those that pose a realistic likelihood of vindictiveness." *Id.* at 27, 94 S.Ct. at 2102. In *Blackledge*, a realistic likelihood of vindictiveness existed because the prosecutor had the means to discourage appeals by "upping the ante" against the defendant with a more serious charge. *Id.* at 27–8, 94 S.Ct. at 2102. Under the circumstances of the case, it was constitutionally impermissible for the prosecutor to seek the more serious charge in response to the defendant's appeal. *Id.* at 28–9, 94 S.Ct. at 2103.

Since the recognition of the doctrine, its application has been limited by subsequent case law from the United States Supreme Court. In *Bordenkircher*, the Court rejected its application to the plea bargaining process where the Commonwealth carries out its threat to pursue more serious charges against the defendant. The realities of the plea negotiation process swayed its decision:

> While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

*Bordenkircher*, 434 U.S. at 364, 98 S.Ct. at 668 (internal quotations and brackets omitted).

In *Goodwin*, the Supreme Court gave some clarity to the scope of the doctrine when it declined to extend the presumption in the pretrial context. *Goodwin*, 457 U.S. at 384, 102 S.Ct. at 2494. While the present case falls within the post-appeal category, portions of the Court's discussion are instructive. It expanded on its prior decisions as follows:

> Both *Pearce* and *Blackledge* involved the defendant's exercise of a procedural right that caused a complete retrial after he had been once tried and convicted. The decisions in these cases reflect a recognition by the Court of the institutional bias inherent in the judicial system against the retrial of issues that have already been decided. The doctrines of *stare decisis*, res judicata, the law of the case, and double jeopardy all are based, at least in part, on that deep-seated bias. While none of these doctrines barred the retrials in *Pearce* and *Blackledge*, the same institutional pressure that supports them might also subconsciously motivate a vindictive prosecutorial or judicial response to a defendant's exercise of his right to obtain a retrial of a decided question.

*Goodwin*, 457 U.S. at 376–77, 102 S.Ct. at 2490. The Court did not have the same concerns in the pretrial stage of proceedings where the prosecution may not yet have fully assessed to what extent to prosecute the defendant. *Id.* at 381, 102 S.Ct. at 2492–93. However, after a trial is concluded and a conviction obtained, "it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted." *Id.*, 102 S.Ct. at 2493. The Court concluded that "a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision." *Id.*

There has been little Kentucky published case law concerning prosecutorial vin-

dictiveness. Those most recently decided have not been resolved favorably to the defendants.

In *Commonwealth v. Leap*, 179 S.W.3d 809 (Ky.2005), after the defendant's trial for assault and being a persistent felony offender (PFO) resulted in a mistrial due to a hung jury, he was indicted for and convicted of wanton endangerment in the first degree, assault in the fourth degree and PFO I. This Court held the presumption of vindictiveness was applicable to the additional charge of wanton endangerment. Our Supreme Court reversed holding that the presumption did not apply.

Quoting *Goodwin*, the Court noted that the presumption "may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct" and is to be applied only when "a reasonable likelihood of vindictiveness exists." *Id.* at 813. The Court reasoned that the Commonwealth, having realized the weakness of the evidence supporting the second-degree assault, was well within its discretion to add the charge. *Id.* at 814. The Court concluded:

> The prosecution has an obligation to the Commonwealth to properly charge and convict persons guilty of criminal conduct as defined in our Kentucky Statutes. Adding an additional felony charge, which was appropriate under the facts, in order to support the charge of PFO, was its job; otherwise the addition of the PFO charge would not be supportable. This is not evidence of a "vindictive motive," nor is the timing of the addition.

> The first mistrial was in February 2002 and the retrial was ordered for May 8, 2002. Adding the charge on March 21, 2002, was appropriate and even necessary as anything later would have put the scheduled trial, or additional indict-

ment, at risk. Thus, the timing here is not evidence of vindictiveness.

*Id.*

On facts more similar to the present, our Supreme Court again addressed prosecutorial vindictiveness in *Dickerson*. Among other charges, Dickerson was originally charged with, and found guilty of, one count of being a felon in possession of a handgun. However, three firearms were found in his residence at the time of his arrest. *Dickerson*, 278 S.W.3d at 152. Dickerson was convicted of first-degree sodomy, possession of a hand gun by a convicted felon, violating the Sex Offender Registration Act, and PFO II. After his convictions were reversed, the Commonwealth obtained a new indictment charging Dickerson with two counts of being a felon in possession of a firearm. *Id.* at 152–53.

The Court concluded that the Commonwealth sought and obtained the new indictment for the purpose of resolving the evidentiary problem mentioned in its original opinion. "So even assuming solely for the purposes of argument that Dickerson ha[d] made a prima facie showing of prosecutorial vindictiveness, the Commonwealth [had] successfully rebutted that presumption that the new charges against Dickerson were a result of prosecutorial vindictiveness." *Id.* at 153.

Although *Dickerson* was unclear whether the Court believed that by bringing new charges after Dickerson's appeal based on information known to the Commonwealth prior to the first trial (the additional firearms found at the time of arrest), the Court later restated its holding. In *Montgomery v. Commonwealth*, 320 S.W.3d 28, 36 (Ky.2010), the Court stated that in *Dickerson*, it held "the addition of new charges to address an evidentiary problem following remand from this Court did not support a presumption of vindictiveness." Therefore, our Supreme Court was not

convinced that mere knowledge of the facts underlying the second indictment at the time of the first trial triggered the presumption.

The most recent case from our Supreme Court on the subject is *Luna v. Commonwealth*, 460 S.W.3d 851 (Ky.2015). Luna's convictions for first-degree murder and first-degree arson were reversed. On retrial, he was again tried and convicted of first-degree murder and first-degree arson but, "[u]nlike the first trial, the Commonwealth sought a finding of statutory aggravators on retrial." *Id.* at 862. Luna appealed.

Among the issues raised was whether the Commonwealth's pursuit of statutory aggravators on remand constituted prosecutorial vindictiveness. *Id.* at 886. Focusing on the "reasonable likelihood of vindictiveness" standard, the Court rejected Luna's argument. *Id.* at 887. The Court held there was no reason to presume vindictiveness noting that the prosecutor was different than in Luna's first trial and looked at the case with "fresh eyes" and more time to prepare. *Id.* Additionally, the Court noted the jury, not the prosecutor, made the decision to convict on the statutory aggravators. *Id.* at 888. In the end, "Luna was indicted for a capital crime and was tried for a capital crime both times." *Id.*

*Leap, Dickerson, Montgomery* and *Luna,* are noteworthy because in each, our Supreme Court was not willing to take an expansive view of prosecutorial vindictiveness. However, none of these cases address the precise arguments presented by the Commonwealth.

First, the Commonwealth contends that prosecutorial vindictiveness cannot apply because the new charges against Perry after his appeal were Class C felonies as opposed to the Class A felony charged in the 2009 indictment. It points out that *Blackledge* held the doctrine applies when the Commonwealth seeks a more serious charges after a successful appeal.

We are not willing to accept the Commonwealth's restrictive reading of *Blackledge.* Although the Class C felonies charged carry less severe penalties than the Class A felony that was reversed, by bringing additional charges after Perry's successful appeal, Perry is subject to an increased term of imprisonment. He is subject to retrial on the Class A felony and the newly charged Class C felonies. Each new count carries with it a maximum of ten-years imprisonment and may be run consecutively, exposing Perry to a possible sentence of up to seventy years. Kentucky Revised Statutes (KRS) 532.110(1)(c). The "ante" does not remain the same after Perry's successful appeal.

 Although the likelihood of vindictiveness may be more readily apparent when a greater charge is substituted upon retrial rather when additional charges are added to the greater charge, there is no *per se* rule. *See United States v. Andrews,* 633 F.2d 449, 454 (6th Cir.1980). Whether the presumption applies requires an inquiry into the "realistic likelihood of vindictiveness" in the particular fact situation. *Id.*

The Commonwealth's second argument that prosecutorial vindictiveness does not apply is based on its assertion that the new charges of physical abuse are based on separate and distinct conduct than the original charges of sexual abuse and sodomy against Perry. There is substantial federal and state authority for the principle that in such situations there is no realistic likelihood of vindictiveness. The prevailing view is that the timing of bringing additional charges based on independent and unrelated conduct is a matter of prosecutorial discretion.

In *Humphrey v. United States*, 888 F.2d 1546 (11th Cir.1989), the Court emphasized that the timing of the new indictment after a successful appeal does not trigger the principles in *Blackledge*. The Court readily distinguished *Blackledge* where a more serious charge based on the same facts as the original charge was substituted for the original charge. *Humphrey*, 888 F.2d at 1549. The Court continued, noting there was no *substitution* in Humphrey's case. In his case, the charges in the indictments after appeal were "different charges based upon independent acts." *Id. See also Williams v. Bartow*, 481 F.3d 492, 504 (7th Cir.2007) (the bringing of unrelated charges are not within the *Blackledge* presumption).

In *United States v. Martinez*, 785 F.2d 663, 668 (9th Cir.1986), the Court reviewed federal opinions and observed that "the state of the law of vindictive prosecution is not entirely clear." However, it was able to conclude as follows:

> If the additional charge arises out of the same nucleus of operative facts as the original charge, a presumption of vindictiveness is raised. If, however, the second charge is unrelated to the first, the presumption does not arise.

*Id.* at 669 (internal quotations, citations and brackets omitted). Quoting from its decision in *United States v. Griffin*, 617 F.2d 1342 (9th Cir.1980), the *Martinez* Court explained:

> Our concern for the deterrence factor cannot .... be used in all cases as a shield against the legitimate requirements of the justice system with respect to a particular defendant. Nothing in *Blackledge* .... presumed to give the defendant a free ride for separate crimes he may have committed, or to prevent a prosecutor from bringing new charges as a result of changed or altered

circumstances which properly bear on prosecutorial discretion.

*Id.* Without more, "adding new charges based on independent acts, even where the separate acts that prompted the new charges occurred in the same spree of activity, does not create a presumption of prosecutorial vindictiveness." *United States v. Kendrick*, 682 F.3d 974, 982 (11th Cir.2012) (quoting *United States v. Jones*, 601 F.3d 1247, 1261 n. 5 (11th Cir.2010)).

State courts have followed the same logic. In *Schiro v. State*, 888 N.E.2d 828, 839 (Ind.App.2008), the Court declined to extend the doctrine of prosecutorial vindictiveness beyond when new, more serious or additional charges, are brought *for the same underlying conduct* after a defendant has successfully appealed. The Court held that prosecutorial vindictiveness simply does not apply if the newly-filed charges are based on conduct unrelated to the original charged conduct. *Id.*

In *State v. Williams*, 270 Wis.2d 761, 677 N.W.2d 691 (2004), the Court rejected a claim of prosecutorial vindictiveness where the prosecutor chose to bring other criminal charges involving different victims and arising from conduct independent from those supporting the original charges. It stated:

> [T]he fact that a defendant is facing stiffer charges arising out of a single incident is important because where such is the case, the concern is that the defendant will be discouraged from exercising his or her right to appeal because he or she is afraid the State will retaliate by substituting a more serious charge for the original one on retrial. However, this concern does not come into play where the new charges stem from a separate incident. In that situation, it is not the appeal that opens the door for the second charge. The prosecutor could have brought the charges

against the defendant at any time, regardless of whether the defendant chose to appeal his or her conviction in the original case.

*Id.* at 787, 677 N.W.2d at 704.

 Generally, a determination whether the additional charges arose from a separate incident or incidents and, therefore, have no nexus with the original indictment, requires an evidentiary hearing and findings of fact and conclusions of law by the trial court. In that event, our Supreme Court has indicated that the proper standard of review is abuse of discretion regarding the decision to grant or deny the defendant's motion and a clearly erroneous standard regarding factual findings. *Lee v. Commonwealth,* 2005–SC–000500–MR, 2006 WL 3386644 (Ky.2006).[1] However, Perry does not dispute that the new charges are unrelated to the original charges. The new charges arise from allegations of physical abuse separate in time and distinct conduct from sexual abuse and sodomy. Although as our Supreme Court pointed out the timing of events is unclear, the remaining count of sodomy allegedly occurred in 2005, while the alleged physical abuse occurred during the time period of January 1, 2006 and December 31, 2007. Additionally, 13–CR–00978 charges crimes against S.P., a different victim than C.P.

Whether the Commonwealth knew of the allegations by C.P. and S.P of physical abuse when it originally sought and obtained an indictment against Perry or at the time of trial makes no difference. The Commonwealth had the discretion to bring physical abuse charges against Perry regardless of whether he appealed or did not appeal his sodomy conviction.

Because no presumption applies, Perry had the burden to prove that the post-appeal charges were motivated by actual vindictiveness. *Leap,* 179 S.W.3d at 814. As the United States Supreme Court emphasized in *Goodwin,* 457 U.S. at 373, 102 S.Ct. at 2488, the defendant's burden in proving a claim of actual vindictiveness is difficult to meet.

The only evidence Perry produced to prove actual vindictiveness was that his wife, who S.P. also implicated in the physical abuse, has not been charged. The fact that Perry's wife has not been charged is not sufficient for the court to interfere with the discretion of the prosecutor. It is not direct evidence that the prosecutor sought additional and new charges to punish Perry for pursuing an appeal of his conviction.

Based on the foregoing, the orders of the Kenton Circuit Court are reversed and the case remanded for further proceedings.

ALL CONCUR.

---

1. Pursuant to Kentucky Rules of Civil Procedure (CR) 76.28(4)(c), this case may be cited.