RENDERED:  AUGUST 30, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0975-MR

KEITH BRADLEY                          APPELLANT

v.           APPEAL FROM WARREN CIRCUIT COURT
HONORABLE STEVE ALAN WILSON, JUDGE
ACTION NO. 19-CR-00579

COMMONWEALTH OF KENTUCKY             APPELLEE

AND

NO. 2022-CA-0977-MR

KEITH BRADLEY                          APPELLANT

v.           APPEAL FROM WARREN CIRCUIT COURT
HONORABLE STEVE ALAN WILSON, JUDGE
ACTION NO. 18-CR-00510

COMMONWEALTH OF KENTUCKY             APPELLEE

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE: ACREE, KAREM, AND LAMBERT, JUDGES.

ACREE, JUDGE: Appellant, Keith Bradley, appeals the Warren Circuit Court's May 25, 2022 Judgment and Sentence on Plea of Guilty. Bradley alleges (1) he was denied both his constitutional and statutory rights to a speedy trial; and (2) the circuit court erred in concluding Bradley was not partially exempt from prosecution based on Kentucky's "Good Samaritan Law", KRS[1] 218A.133. We affirm.

## **BACKGROUND**

On December 18, 2017, Bradley was stopped for speeding in Warren County. Bradley had an active warrant and was arrested. During a search incident to his arrest, the police discovered on his person suspected methamphetamine and a gabapentin pill – a drug for which Bradley did not have a prescription. Suspected cocaine and more suspected methamphetamine were discovered in Bradley's truck. Bradley was released on bond. Bradley was indicted for tampering with physical evidence, two counts of first-degree possession of a controlled substance, and driving under the influence.

---

[1] Kentucky Revised Statutes.

Two months later, on February 28, 2018, Bradley was with a friend, Tessa Reece, when she began to overdose. Bradley asked a neighbor to call 911 while he stayed with Reece. Paramedics were unable to save Reece. Bradley admitted to the police that methamphetamine was in his truck, and he was arrested. Bradley was indicted on charges of second-degree manslaughter, first-degree trafficking in a controlled substance, possession of drug paraphernalia, and first-degree persistent felony offender.

Bradley's two cases were consolidated. He pleaded not guilty to all charges. Bradley and the Commonwealth began negotiating an *Alford*[2] plea and negotiations continued until May 13, 2019. A pretrial conference was set for June 17, 2019. For unknown reasons, the circuit court continued the trial until July 22, 2020 and scheduled a pretrial conference for June 22, 2020. On March 20, 2020, the parties, by agreement, rescheduled the pretrial conference for July 6, 2020.

Bradley filed a *pro se* motion to dismiss in June 2020. Apparently, Bradley's appointed counsel declined to file the motion on Bradley's behalf. Bradley argued KRS 218A.133 – commonly called the "Good Samaritan Law" – exempted him from prosecution for the charges stemming from Reece's death. Bradley wanted to be present at the hearing on the motion, which resulted in

---

[2] Under *North Carolina v. Alford*, a defendant is permitted to acknowledge the strength of the evidence against him and enter a guilty plea while maintaining his innocence. 400 U.S. 25, 36-37, 91 S. Ct. 160, 167, 27 L. Ed. 2d 162 (1970).

another continuance of the pretrial conference and trial. The pretrial conference was rescheduled for September 9, 2020, and the trial was continued to December 15, 2020. The trial did not take place in December 2020, and the Commonwealth acknowledges that it "is not clear" why the circuit court did not hold the trial.

Bradley filed a second motion to dismiss in March of 2021, again relying on KRS 218A.133. In a letter accompanying the motion, Bradley refiled the motion because circuit court staff told him that there was no record of his original motion. The circuit court scheduled status conferences for April 26, June 22, and August 23, 2021.

On August 9, 2021, Bradley filed his speedy trial motion. The circuit court considered the motion at the previously scheduled August 23, 2021 status conference. The circuit court scheduled another pretrial conference for October 18, 2021, and set trial for November 3, 2021. The trial was continued to November 12. Again, the trial did not take place on that date.

Instead of conducting the trial, the circuit court considered Bradley's motion to dismiss. The circuit court granted the motion as to Bradley's possession charge but denied the motion as to his trafficking charge. Yet again, the circuit court scheduled a pretrial conference for March 8, 2022, and scheduled trial for July 12, 2022.

Bradley filed a third motion to dismiss on February 14, 2022, arguing the Commonwealth failed to prosecute his case. He argued the case should be dismissed because his speedy trial motion was still pending, and the Commonwealth had taken no action in response to the motion in more than 180 days.

The circuit court considered Bradley's arguments on his motion to dismiss for failure to prosecute at the March 8, 2022 pretrial conference. Bradley argued his original case had been pending for three years and nine months, that his second case had been pending for two years and nine months, and that his speedy trial motion had been pending for seven months. He acknowledged that in-person court proceedings had been suspended for a year due to COVID. The circuit court denied Bradley's motion, noting that COVID-related delays and a prosecutor's injury provided just cause for the delay.

Bradley entered his *Alford* plea on May 23, 2022, pleading guilty to first-degree possession of a controlled substance, driving under the influence, first-degree wanton endangerment, and first-degree trafficking in a controlled substance. Bradley received a total sentence of eighteen years of incarceration. On his motion to enter guilty plea, Bradley handwrote: "does not waive right to appeal pretrial motions." This is the only reference to preservation of his right to appeal on any documents relating to his plea, and the circuit court's order on

Bradley's guilty plea explicitly states that Bradley understood he waived both his right to appeal and his right to a speedy trial.  Bradley now appeals.

## ANALYSIS

### I. Preservation of Right to Appeal

We must first address the Commonwealth's contention that Bradley waived his right to appeal by entering his guilty plea, despite his motion to enter guilty plea reflecting Bradley's intention to the contrary.  The Commonwealth argues that no order or other document of the circuit court reflects that Bradley pleaded guilty on the condition he would be able to appeal the circuit court's rulings on his pretrial motions.  Indeed, the circuit court's order explicitly states otherwise.  The Commonwealth argues Bradley's handwritten amendment to his motion was insufficient to preserve Bradley's right to appeal.

This issue arose in *Dickerson v. Commonwealth*, in which the Commonwealth argued a defendant, Dickerson, failed to preserve his right to appeal.  278 S.W.3d 145, 148 (Ky. 2009).  There, too, "nothing in the final judgments of conviction in question actually reflects that Dickerson's guilty plea was conditional."  *Id*.  However, because Dickerson's motion to enter guilty plea contained the word "conditional" handwritten at the top, and because similar handwritten notations appeared on the Commonwealth's plea offer and the

arraignment order entered after Dickerson's guilty plea, the Supreme Court of Kentucky determined Dickerson had minimally preserved his right to appeal. *Id*.

The Supreme Court in *Dickerson* derived the following rule from applicable precedent to determine whether a defendant preserved his right to appeal:

> Synthesizing our precedent in this area leads to the conclusion that we will consider issues on appeal from a conditional guilty plea only if those issues: (1) involve a claim that the indictment did not charge an offense or the sentence imposed by the trial court was manifestly infirm, or (2) the issues upon which appellate review are sought were expressly set forth in the conditional plea documents or in a colloquy with the trial court, or (3) if the issues upon which appellate review is sought were brought to the trial court's attention before the entry of the conditional guilty plea even if the issues are not specifically reiterated in the guilty plea documents or plea colloquy.

*Id*. at 149.

In our view, Bradley's handwritten amendment to his motion to enter his guilty plea adequately preserved his right to appeal the circuit court's handling of his pretrial motions. By doing so, he expressly set forth the issues he sought to appeal as the rule in *Dickerson* contemplates. Both the Commonwealth and the circuit court had notice that Bradley intended his guilty plea to be conditioned upon his right to appeal the denial of his pretrial motions. Accordingly, the issues raised in Bradley's appellate brief are properly before us for our review.

II. Speedy Trial

Bradley first argues the circuit court erred by denying his motion for a speedy trial because the circuit court deprived him of both his statutory and constitutional rights to a speedy trial. The Sixth Amendment to the United States Constitution guarantees criminal defendants "the right to a speedy and public trial[.]" UNITED STATES CONST. amend VI. This right applies to the states by application of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Barker v. Wingo*, 407 U.S. 514, 515, 92 S. Ct. 2182, 2184, 33 L. Ed. 2d 101 (1972) (citations omitted). The Kentucky Constitution also guarantees "a speedy public trial" to criminal defendants. KY. CONST. § 11. In furtherance of this right, the General Assembly enacted KRS 500.110:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of this state, and whenever during the continuance of the term of imprisonment there is pending in any jurisdiction of this state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

KRS 500.110. Trial courts, therefore, have "the ability to grant continuances extending the disposition of the untried indictment beyond 180 days after the statutory right is invoked." *Darcy v. Commonwealth*, 441 S.W.3d 77, 83 (Ky. 2014). Further, because the statute empowers trial courts to grant "*any* necessary or reasonable continuance," the General Assembly clearly intended trial courts to have broad power in granting such continuances. KRS 500.110 (emphasis added); *see Darcy*, 441 S.W.3d at 84.

As KRS 500.110 states, unless good cause existed for the circuit court to grant a reasonable or necessary continuance, the circuit court was required to bring Bradley to trial within 180 days of his invocation of the statute. Bradley invoked the statute in his August 9, 2021 motion for speedy trial. The circuit court never held a trial; after Bradley filed his motion, the circuit court continued the trial from November 3, 2021, to November 12, 2021, and, again, to July 12, 2022. The circuit court set Bradley's ultimate trial date for nearly a year after he filed his motion.

However, the circuit court had good cause for this delay. Apparently, the Commonwealth's Attorney suffered a serious injury, which both Bradley and the Commonwealth describe in their briefs as "life-threatening." This is analogous to a delay in *Barker v. Wingo*, wherein the Supreme Court of the United States described the illness of the sheriff in charge of the investigation as a "strong

excuse" for a seven-month period of delay. *Barker*, 407 U.S. at 533-34, 92 S. Ct. at 2194. While the circuit court subjected Bradley to multiple continuances of his trial date prior to his motion, KRS 500.110 only contemplates continuances made after the statute's invocation which cause a defendant to wait for trial for more than 180 days. We therefore cannot say the circuit court deprived Bradley of his statutory right to a speedy trial.

As for Bradley's constitutional right to a speedy trial, "[w]e analyze a defendant's constitutional rights to a speedy trial, under both the Federal and Kentucky constitutional provisions, by applying the four-factor *Barker* test." *Dunaway v. Commonwealth*, 60 S.W.3d 563, 569 (Ky. 2001) (citing *Barker*, 407 U.S. 514, 92 S. Ct. 2182). These factors are: "(1) length of the delay; (2) reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant." *Tamme v. Commonwealth*, 973 S.W.2d 13, 22 (Ky. 1998) (citing *Barker*, 407 U.S. 514, 92 S. Ct. 2182). "We regard none of the four factors . . . as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker*, 407 U.S. at 533, 92 S. Ct. at 2193. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.*

First, for a defendant to be deprived of his speedy trial right, he must have experienced a delay of such a length that the delay was "presumptively

prejudicial." *Dunaway*, 60 S.W.3d at 569 (citing *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192). Presumptively prejudicial delay is found by balancing the complexity of the charges against the delay; "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id*. (quoting *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192).

In *Dunaway*, Dunaway was charged with three counts of first-degree robbery and one count of being a persistent felony offender. *Id*. The Kentucky Supreme Court considered these charges to be "serious and of moderate complexity." *Id*. When the Kentucky Supreme Court weighed the seriousness and complexity of the charges against Dunaway's thirteen and one-half month delay, it determined the delay was presumptively prejudicial. *Id*. In *Goben v. Commonwealth*, a defendant's multiple drug possession, drug trafficking, drug manufacture, and felon in possession of a firearm charges, when weighed against a five-year delay, "easily qualifie[d] as presumptively prejudicial[.]" 503 S.W.3d 890, 898, 905 (Ky. 2016).

Both of Bradley's underlying cases experienced long delays: fifty-three months and seventeen days for the 2018 arrest, and fifty months and twenty-seven days for the 2019 arrest. A delay of over four years is plainly presumptively prejudicial. As such, we must "inquire further as to who was responsible for the delay – [Bradley], the Commonwealth or, as is often the case, both." *Id*. at 905.

When examining the reasons offered for delay under the second *Barker* factor, "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192. The government's deliberate efforts to impede the defense are "weighed heavily" against the prosecution. *Id.* Neutral reasons for delay can also exist, which include negligence or an overburdened court; though these reasons are neutral and less weight is applied to them, "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* "[A] valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* In short, this examination requires us to determine "whether the government or the criminal defendant is more to blame for [the] delay[.]" *Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 2690, 120 L. Ed. 2d 520 (1992) (citing *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192).

In the analogous *Henderson v. Commonwealth*, though a fifty-six-month delay was "clearly presumptively prejudicial," the Kentucky Supreme Court determined Henderson's own actions – including multiple *pro se* motions and his insistence on a new attorney – constituted most of the delay in bringing his case to trial. 563 S.W.3d 651, 664 (Ky. 2018). On balance, Henderson's speedy trial right was not violated, despite the trial court's failure to rule on pending suppression motions. *Id.*

In Bradley's case, much of the delay he experienced was a result of his own pretrial motions. As the Commonwealth notes, Bradley filed multiple motions on his own behalf between 2018 and 2022. The circuit court granted continuances after each, apparently to allow it to evaluate Bradley's motions prior to trial. The other sources of delay included scheduling complications with the circuit court due to COVID, which is a neutral reason for delay and weighs slightly against the government. Additionally, the Commonwealth Attorney's serious injury, which we already determined to be good cause for delay, also weighs slightly against the government. However, as in *Henderson*, we believe the bulk of the delay in this case resulted from Bradley's multiple pretrial motions.

It is clear Bradley asserted his right to a speedy trial – the third *Barker* factor. He did so first on August 9, 2021, when he filed his motion for speedy trial. Bradley again asserted this right as a component of his February 14, 2022 motion to dismiss. Those asserting their right to a speedy trial must do so "vigorously." *Stacy v. Commonwealth*, 396 S.W.3d 787, 798 (Ky. 2013). Bradley asserted his right to a speedy trial and continued to do so until entering his plea. However, Bradley apparently never objected to the circuit court's repeated continuances, and one continuance was granted to accommodate his desire to be present at a pretrial conference. Though we believe Bradley sincerely and somewhat vigorously asserted his right to a speedy trial, a defendant's assertion of this right must be

viewed in the context of his other conduct. *Dunaway*, 60 S.W.3d at 571 (citations omitted). While we find Bradley's assertion weighs in his favor, it does not weigh heavily.

As *Barker* notes, the fourth factor, prejudice, "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." 407 U.S. at 532, 92 S. Ct. at 2193. *Barker* identifies three of these interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id*. (citations omitted). "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*.

As the Commonwealth notes and as the trial court found, Bradley was incarcerated for reasons unrelated to the charges in the instant case. On the night Reece died, Bradley was arrested for a parole violation. His parole was revoked, and he returned to state custody. Accordingly, Bradley's incarceration does not constitute oppressive pretrial incarceration. As to the second interest, though Bradley's brief says the pendency of his cases caused him anxiety, Bradley acknowledged before the circuit court he suffered from anxiety and depression prior to these underlying charges. Additionally, "speculative and generic claims are insufficient to support a claim of prejudice." *Dickerson*, 278 S.W.3d at 152.

-14-

Bradley's brief does not demonstrate his anxiety or concern with sufficient particularity. Nor can we say Bradley's defense was impaired by the circuit court's delay. He has not shown that his delay led to spoliation of evidence, caused witnesses to become unavailable, or otherwise hindered him in defending against his charges.

On balance, the four *Barker* factors weigh against concluding Bradley was deprived of his speedy trial right. Though the lengthy delay was presumptively prejudicial, a sizable portion of the delay resulted from Bradley's own motions. Though the Commonwealth's Attorney's injury and difficulties with COVID weigh in favor of Bradley, these are outweighed by Bradley's pretrial motions and their resultant continuances. Further, though Bradley did continuously assert his speedy trial right beginning in August of 2021, Bradley never objected to the circuit court's continuances made prior to the speedy trial motion. And, upon examination of the circumstances of this case, Bradley has not demonstrated prejudice of such a degree that it would outweigh the other *Barker* considerations. For these reasons, we hold Bradley was not deprived of his right to a speedy trial.

III. Good Samaritan Statute

Bradley argues the circuit court erred in denying his motion pursuant to the Good Samaritan statute, KRS 218A.133. He argues this statute exempts him

from prosecution for the drug trafficking charge he received following the death of

Tessa Reece.

As relevant to this appeal, KRS 218A.133 provides:

(2) A person shall not be charged with or prosecuted for a criminal offense prohibiting the possession of a controlled substance or the possession of drug paraphernalia . . . if:

(a) In good faith, medical assistance with a drug overdose is sought from a public safety answering point, emergency medical services, a law enforcement officer, or a health practitioner because the person:

1. Requests emergency medical assistance for himself or herself or another person;

2. Acts in concert with another person who requests emergency medical assistance; or

3. Appears to be in need of emergency medical assistance and is the individual for whom the request was made;

(b) The person remains with, or is, the individual who appears to be experiencing a drug overdose until the requested assistance is provided; and

(c) The evidence for the charge or prosecution is obtained as a result of the drug overdose and the need for medical assistance.

KRS 218A.133(2). The statute defines "drug overdose" to include "death which

reasonably appears to be the result of consumption or use of a controlled

substance," and defines "good faith" to exclude "seeking medical assistance during

-16-

the course of the execution of an arrest warrant, or search warrant, or a lawful search." KRS 218A.133(1)(a)-(b). Important to this case, the statute also provides: "The provisions of subsection (2) of this section shall not extend to the investigation and prosecution of any other crimes committed by a person who otherwise qualifies under this section." KRS 218A.133(3).

We decline Bradley's invitation to interpret this statute to exempt his drug trafficking charge from prosecution. The Court is instructed that "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature[.]" KRS 446.080(1). However, "where the language of a statute is clear and unambiguous on its face, we are not free to construe it otherwise even though such construction might be more in keeping with the statute's apparent purpose." *MPM Fin. Grp., Inc. v. Morton*, 289 S.W.3d 193, 197 (Ky. 2009) (citing *Whittaker v. McClure*, 891 S.W.2d 80, 83 (Ky. 1995)). Simply put, KRS 218A.133 clearly contemplates the offenses of possession of drugs and drug paraphernalia and does not contemplate other offenses where such possession is incidental to the offense. This is particularly so in light of 218A.133(3) explicitly prohibiting the statute's application to crimes other than drug or drug paraphernalia possession.

We confronted similar circumstances in *Commonwealth v. Kenley*, where Kenley, an inmate, was indicted on charges of first-degree promoting

-17-

contraband after fentanyl was discovered on her person while Kenley was overdosing. 516 S.W.3d 362, 363 (Ky. App. 2017). Kenley obtained a dismissal of this charge based on application of KRS 218A.133, and the Commonwealth appealed. *Id.* at 364. We reversed because KRS Chapter 218A unambiguously did not include first-degree promoting contraband within its scope. *Id.* at 365. We noted the statute prohibiting promotion of contraband – KRS 520.050 – prohibits, among other actions, possession of dangerous contraband and, though contraband could include drugs, KRS 520.050 does not directly criminalize possession of drugs. *Id.* at 365.

Additionally, we determined KRS 520.050 "is not a statute aimed at criminalizing mere possession of drugs." *Id.* Rather, "the First-Degree Promoting Contraband statute on its face evidences an intent by the General Assembly to combat the harm created by any dangerous contraband" including drug markets inside prisons and violence and intimidation resulting therefrom. *Id.* Nor were we convinced application of KRS 218A.133 to KRS 520.050 fulfilled the public policy objectives of combating the heroin epidemic and rehabilitating drug users; to the contrary, Kenley's drug possession "endangered those who worked and resided at the detention facility" and "perpetuated an ongoing and serious problem" inside our detention facilities. *Id.* at 366.

We do not believe Bradley's case is a closer call than *Kenley*. The plain language of KRS 218A.1412 – Kentucky's statute prohibiting trafficking in controlled substances in the first degree – does not directly include possession of drugs as an element of the offense. *See* KRS 218A.1412. Rather, "[a] person is guilty of trafficking in a controlled substance in the first degree when he or she knowingly and unlawfully traffics in" a series of specified quantities of certain drugs. KRS 218A.1412(1). The words "possess," "possession," or any variant thereof do not appear in the statute, nor do any synonymous terms.

However, trafficking is defined as relevant elsewhere in Chapter 218A as follows: "to manufacture, distribute, dispense, sell, transfer, or possess with intent to manufacture, distribute, dispense, or sell a controlled substance[.]" KRS 218A.010(56). This is directly analogous to our discussion of KRS 520.050 in *Kenley* – though trafficking under KRS 218A.1412 could include possession of controlled substances, the statute does not directly criminalize drug possession. Nor can we say exemption of drug trafficking would serve the public policy purpose of combating the heroin epidemic. As should be abundantly clear, drug trafficking activity directly exacerbates Kentucky's struggle with drug abuse. For these reasons, KRS 218A.1412 falls under the category of crimes for which an individual could still be indicted per KRS 218A.133(3) and, therefore, the

circumstances of Bradley's drug trafficking charge do not exempt him from prosecution.

## CONCLUSION

Based on the foregoing, we affirm the Warren Circuit Court's May 25, 2022 Judgment and Sentence on Plea of Guilty.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Adam Meyer<br>Frankfort, Kentucky | Daniel Cameron<br>Attorney General of Kentucky<br><br>Harrison Gray Kilgore<br>Assistant Attorney General<br>Frankfort, Kentucky |